UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

ELIOT S. SASH; ROSLYNNE L. SASHE;
JAMES L. SASHE,

        Plaintiffs,

- against -

THE CITY OF NEW YORK, et al.,

        Defendants.
----------------------------------------------------------X

**REPORT AND RECOMMENDATION**

04-CV-0976 (ENV)(LB)

**BLOOM, United States Magistrate Judge:**

*Pro se* plaintiff Eliot S. Sash[1] ("plaintiff" or "Sash"), and his two children, Roslynne L. Sashe and James L. Sashe, bring this action pursuant to 42 U.S.C. §§ 1983, 1985, 1986, and 1988 against the City of New York ("City"), NYC Administration of Children's Services ("ACS") and eight of its former and current employees, former Mayor Rudolph Guiliani, the former Corporation Counsel of the City of New York, Michael Hess, Gerald Harris, Mayra Marquez, in

---

[1] Mr. Sash is no stranger to the courts of this Circuit. Since Sash filed the instant claim with the Court on March 18, 2004, he and his wife have initiated sixteen other civil actions in both this district and the Southern District of New York. Plaintiff and/or his wife have filed the following cases in the Eastern District: Sash v. Defendant Does #5 to Defendant Doe # 25, et al., No. 04 CV 2106 (ENV)(LB) (filed May 19, 2004); Garland-Sash, et al., v. The City of New York, et al., No. 04 CV 0301 (NGG)(LB) (filed May 28, 2004), Sash v. Zenk, et al., No. 04 CV 2476 (NGG)(LB) (filed June 14, 2004); Sash v. Zenk et al., No. 04 CV 2503 (ENV)(LB) (filed June 15, 2004); Sash v. New York State Div. of Parole, et al., No. 05 CV 231 (NGG)(LB) (filed Jan. 14, 2005); Garland-Sash, et al., v. Stutz, No. 05 CV 4207 (ENV)(LB) (filed Aug. 25, 2005); Sash, et al., v. Bureau of Prisons, et al., No. 06 CV 5908 (ENV)(LB) (filed September 29, 2006, Sash terminated as a plaintiff on Feb. 1, 2007); Sash v. Laird et al., No. 06 CV 6052 (LB) (filed Nov. 7, 2006). The following cases were filed in the Southern District: Sash v. Schwartz, No. 04 Civ. 9634 (filed Dec. 8, 2004); Sash, et al., v. The City of New York, et al., No. 05 Civ. 1544 (filed Feb. 4, 2005); Sash v. Zenk, et al., No. 05 Civ. 3543 (filed Apr. 6, 2005); Garland-Sash, et al., v. Lewis, et al., 05 Civ. 6827 (filed Aug. 1, 2005); Sash v. Dudley, No. 05 Civ. 7498 (filed Aug. 24, 2005); Sash, et al., v. Callahan, et al., No. 05 Civ. 8798 (filed Oct. 17, 2005); Sash v. Parks, et al., No. 06 Civ. 4218 (filed Jun. 5, 2006); Sash v. Plummer, et al., No. 06 Civ. 5336 (filed Jun. 11, 2007).

her individual and official capacity as an employee of Westchester County,[2] Yonkers Police Officer Rozzi, the State of New York and various of its entities and agents, and twenty-five unnamed defendants. Plaintiffs allege that their constitutional rights, as well as those of Annmarie Rose Sashe, Sash's granddaughter and plaintiff Roslynne L. Sashe's daughter, were violated by the defendants' investigation and prosecution of child-neglect charges against Sash and his wife spanning from December 1999 to March 2001.

On June 25, 2004, plaintiffs' claims were dismissed against all defendants except for the City of New York, ACS and its employees, the former mayor, Michael Hess, and Gerald Harris (referred to collectively as the "City defendants"), Mayra Marquez and Westchester County (the "County defendants"), and Police Officer Rozzi. The City and County defendants now move to dismiss plaintiffs' complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[3] The Honorable Eric N. Vitaliano referred this motion to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b).[4] For the reasons that follow, I respectfully recommend that plaintiffs' complaint should be dismissed as plaintiffs' claims are barred by the doctrines of res judicata and collateral estoppel.

---

[2] Claims brought against a municipal employee in his or her official capacity are deemed to have been brought against the municipality itself. Will v. Michigan Dept. of State Police, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); Patterson v. County of Oneida, 375 F.3d 206, 226 (2d Cir. 2004).

[3] The City brings its motion on the behalf of the City of New York, James Harris and Vanessa Thompson, the only defendants who were properly served.

[4] The case was reassigned to Judge Vitaliano on March 23, 2006.

# BACKGROUND

## A. The Facts

The following facts are taken with the permission of the Honorable Nicholas G. Garuafis from his September 1, 2005 opinion:[5]

> The Plaintiff[s] allege that between December 9, 1999 and February 25, 2000, seven anonymous phone calls were made to the New York State Child Abuse and Maltreatment Register ("SCR") alleging that the Plaintiff [Sash] was neglecting [his] daughter, Sabrina, and [Sash's wife was] maintaining her Queens apartment in an unsanitary condition. [Comp. ¶ 19, 29, 39, 53, 58, ] The Plaintiff [Sash] alleges that these calls were transmitted to ACS for investigation. [Id.]
>
> In investigating these claims, the Plaintiff [Sash] alleges that ACS and its employees: (1) disparaged [him] by leaving letters in plain view stating that the Plaintiff was subject to a child neglect complaint [Id. ¶¶ 24, 26, 33-35]; (2) threatened to violate the Plaintiff's unspecified "civil" and constitutional rights [Id. ¶ 43]; (3) refused to accept proof that the Plaintiff did not reside in New York City [Id. ¶ 57]; (4) deceived the Family Court judge by testifying that the Plaintiff was the subject of seven previously "indicated"[6] reports of child abuse and neglect [Id. ¶ 121]; and (5) failed to provide proper training and supervision to ACS employees to stop the violation of the Plaintiff's constitutional rights. [Id. ¶¶ 22, 28, 40, 124, 138, 140-142, 149-151.]
>
> The Plaintiff[s] allege that between December 29, 1999 and January 5, 2000, the individuals at ACS assigned to the investigation filed false petitions and false affidavits in New York State Family Court in Queens County to have the Plaintiff [Sash] arrested and [his children] removed. [Id. ¶ 45-48.] The Plaintiff[s] further claims that [Plaintiff Sash's] rights were violated on January 14, 2000, April 24, 2000, and April 25, 2000, when ACS employees along with New York City Police Department officers attempted to enforce "fraudulently obtained arrest warrants." [Id. ¶¶ 52, 94-95.] The Plaintiff [Sash] also claims that in the course of enforcing the warrants on April 25, 2000, ACS employees made false allegations about the Plaintiff's family to [his] neighbors. [Id. ¶ 96.]

---

[5] These facts were set forth in Judge Garaufis's discussion of Sash's wife's parallel claim. Garland-Sash v. City of New York, No. 04 CV 0301 (NGG), 2005 WL 2133592, at *1-2 (E.D.N.Y. Sept. 1, 2005).

[6] New York Social Service Law § 424(7) requires that, within 60 days of transmission of a report of child abuse or maltreatment, a local child protective service must determine whether a report is "indicated" or "unfounded." An "indicated" report is one in which "an investigation determines that some credible evidence of the alleged abuse or maltreatment exists." 18 N.Y.C.R.R. § 432.1(g).

The Plaintiff[s] allege that on February 27, 2000, ACS employees again gave false information under oath in order to obtain "a 'break-down' warrant" so that ACS could forcibly enter and inspect the Plaintiff[s'] apartment, and that this warrant was executed on March 3, 2000 in violation of [their] constitutional rights. [Id. ¶ 74-75, 80.]

The Plaintiff [Sash] alleges that on May 25, 2000, [he] and [his] daughter "voluntarily surrendered" to New York State Family Court in Queens County, and the arrest warrant and remand order were vacated. [Id. ¶ 115-116.] The Plaintiff claims that during this and other court proceedings, ACS employees provided false testimony, thus defaming the Plaintiff, committed perjury, and otherwise violated the Plaintiff's constitutional rights. [Id. ¶¶ 96, 113, 121, 123.]

The Plaintiff[s] allege that on December 21, 2000, Queens County Family Court transferred the case to Westchester County Family Court. [Id. ¶ 129.] According to the Plaintiff[s], "in or around the end of January 2001," Westchester County Family Court sent a request to ACS inquiring whether ACS intended to proceed with its cause of action, [Id. ¶¶ 130-131], but ACS delayed until the end of March 2001 to inform the court that the charge it filed against the Plaintiff [Sash] was not credible and that it would not take any further action in the matter. [Id. ¶¶ 131-132.] The Plaintiff[s] allege that the action against [Plaintiff Sash] was then dismissed by Judge Elitz of Westchester County Family Court. [Id. ¶ 132, 134.]

With regard to Mayra Marquez, the Plaintiff[s] allege that Marquez divulged unidentified confidential and privileged information to former ACS Special Assistant Corporation Counsel Lisa Eulau and made unqualified medical and psychological diagnoses of the Plaintiff [Sash] that were used in sworn affidavits against the Plaintiff. [Id. ¶¶ 48-50.] The Plaintiff[s] allege that these conversations occurred on January 5, 2000 and March 6, 2000. [Id.]

**B. Procedural History**

On March 18, 2004, plaintiffs initiated the instant action. Two months later, on May 28, 2004, plaintiff Sash's wife, Joyce Garland-Sash ("Garland-Sash") commenced a nearly identical suit, naming the same defendants and making virtually the same factual allegations.[7] See Garland-Sash, No. 04 Civ. 0301 (NGG), docket entry 1. While both cases were assigned to

---

[7] Although substantively identical to the instant complaint, Garland-Sash's complaint was brought on her behalf and on behalf of Sash and Garland-Sash's infant daughter, Sabrina. Sash was not a named plaintiff in that action.

4

Judge Garaufis, the actions were not consolidated.

On June 25, 2004, Judge Garaufis dismissed plaintiffs' claims against most of the named defendants in this action, leaving only plaintiffs' claims against the City defendants, the County defendants, and Police Officer Rozzi to proceed. See docket entry 9. In his order, Judge Garaufis also denied plaintiffs' motion for the appointment of a guardian ad litem for minor Annmarie Sashe.[8] Judge Garaufis further directed Sash to submit an affidavit stating the ages and birth dates of his two children, Roslynne and James Sashe, and to obtain counsel for his granddaughter, Annmarie, or her claims would be dismissed.

On July 14, 2004, Sash submitted a letter stating the birth dates of his two children. See docket entry 10. Sash's letter also requested the Court to reconsider its decision declining to appoint a guardian ad litem and dismissing plaintiffs' claims against defendant Eulau. Judge Garaufis denied plaintiff's application for reconsideration and directed Sash to file the previously ordered affidavit. See docket entry 11. On November 21, 2004, Sash submitted an unsworn "affidavit." See docket entry 14. Thereafter, plaintiffs' case stalled for almost sixteen months.[9]

While the instant case stalled, the nearly identical case of plaintiff's wife, Garland-Sash, moved forward. On January 10, 2005, the Court granted the City defendants' motion for a more definite statement, and Garland-Sash was ordered to file a redrafted, verified complaint excising all reference to the dismissed defendants. See Garland-Sash, No. 04 Civ. 0301 (NGG), docket entry 8. Before Garland-Sash filed her amended complaint, on February 25, 2005, the County

---

[8] Motions filed March 18, 2004. See docket entries 7, 8.

[9] At the time they filed their complaint, plaintiffs were granted leave to proceed *in forma pauperis*. However, the United States Marshals Service was not directed to serve the summons and complaint upon the remaining defendants until Judge Vitaliano directed service by order dated May 23, 2006. See docket entry 20.

5

defendants moved to dismiss Garland-Sash's original complaint under Fed. R. Civ. P 12(b)(6) for failure to state a claim. On May 31, 2005, the City defendants moved on the same ground to dismiss Garland-Sash's original complaint. Both motions to dismiss were granted by Judge Garaufis on September 1, 2005.[10]

On March 23, 2006, Garland-Sash's case was reassigned to the Honorable Eric N. Vitaliano, who on July 3, 2007 ordered plaintiff to show cause why her claims against Police Officer Rozzi, the only remaining defendant, should not be dismissed as barred by the statute of limitations. On September 6, 2007, Judge Vitaliano dismissed Garland-Sash's federal and state law claims against Rozzi with prejudice as time-barred under both federal and state law. See Id., docket entry 52.

Meanwhile, on April 5, 2006, because Sash had failed to obtain counsel for his granddaughter as ordered by Judge Garaufis, Judge Vitaliano dismissed all claims relating to or purportedly brought on behalf of Annmarie Sashe. In addition, as more than a year had elapsed since Judge Garaufis's June 25, 2004 order had been entered, Judge Vitaliano ordered the remaining plaintiffs in this action to show cause within thirty days why the case should not be dismissed for failure to prosecute. On April 21, 2006, plaintiffs submitted letters, and Judge Vitaliano ordered the case to proceed. Defendant Rozzi filed an answer to plaintiffs' complaint.

---

[10] The Court found that all of the federal claims against the City defendants, except for one, were time-barred and that the remaining, non-time-barred claim failed under 42 U.S.C. § 1983. See Garland-Sash, 2005 WL 2133592, at *3-4. The Court also found that Garland-Sash's federal claims against the City under 42 U.S.C. §§ 1985, 1986, and 1988 had no legal basis and were without merit and that her state law claims were time-barred. Id., at *5. With respect to Westchester County and Mayra Marquez, the Court dismissed plaintiff's claims as she failed to state a deprivation of her federal rights and "failed to affirmatively plead that she filed a Notice of Claim against the County or Marquez, as required under New York law when bringing a tort claim against a municipality or any of its officers, agents or employees." Id., at *6,

The City and County defendants filed motions to dismiss.

## DISCUSSION

### A. Standard of Review

When ruling on a motion to dismiss, a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. See Bell Atlantic Corp. v. Twombly, --- U.S. ----, ----, 127 S.Ct. 1955, 1965 (2007); (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508, n. 1 (2002)); Roth v. Jennings, 489 F.3d 499, 510 (2d Cir. 2007). It is not, however, required to accept "conclusory allegations or legal conclusions masquerading as factual conclusion." Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002) (internal citation and quotation marks omitted). To survive a motion to dismiss, a plaintiff's complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." Twombly, 127 S. Ct. at 1974. If a plaintiff does not "nudge [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." Id.

### B. Res judicata

Res judicata, or claim preclusion, prevents parties or their privies from relitigating issues that were or could have been raised in a previous action in which a final judgment on the merits has been reached. See San Remo Hotel, L.P. v. City and County of San Francisco, 545 U.S. 323, 336, n. 16 (2005); accord Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 640 (2d Cir. 2005); King v. Fox, 418 F.3d 121, 131 (2d Cir. 2005). To find that a claim is precluded based on res judicata, three requirements must be met: (1) the previous action must have

7

involved an adjudication on the merits; (2) the previous action must have involved the parties or those in privity with them; and (3) the claims asserted in the subsequent action must have, or could have, been raised in the prior action. See Monahan v. New York City Dep't of Corr., 214 F.3d 275, 285 (2d Cir. 2000) (citations omitted); accord Pike v. Freeman, 266 F.3d 78, 91 (2d Cir. 2001); Melwani v. Jain, No. 02 Civ. 1224, 2004 WL 1900356, at *1 (S.D.N.Y. Aug. 24, 2004).

A dismissal with prejudice on statute of limitations grounds is considered an adjudication on the merits and precludes a litigant from refiling the same claim (or other claims that arise from the same nucleus of facts) in the court that dismissed the claim. Semtek Int'l Corp. v. Lockheed Martin Corp., 531 U.S. 497, 506, 121 S.Ct. 1021, 1027, 149 L.ed.2d 32 (2001); Smith v. Woolsey, 399 F.3d 428, 435 (2d Cir. 2005). A dismissal under Fed. R. Civ. P. 12(b)(6) is also considered an adjudication on the merits with preclusive effect. See Alliance For Environmental Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 89, n.6 (2d Cir. 2006) (citing Federal Dept. Stores, Inc. v. Moitie, 452 U.S. 392, 399, n. 3, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981)); see also Mitchell v. Nat'l Broad. Co., 553 F.2d 265, 271 (2d Cir. 1977) ("[i]t is well settled that a judgment dismissing a complaint on a...motion to dismiss for failure to state a claim upon which relief can be granted, and without reservation of any issue, is presumed to be upon the merits..."); Exchange Nat'l Bank of Chicago v. Touche Ross & Co., 544 F.2d 1126, 1130-31 (2d Cir. 1976) (stating that "judgments under 12(b)(6) are on the merits, with res judicata effects").

In the Second Circuit, it is also well-settled law that there need not be literal privity for res judicata to apply. See, e.g., Alpert's Newspaper Delivery, Inc. v. The New York Times Co., 876 F.2d 266, 270 (2d Cir. 1989); see also Monahan, 214 F.3d at 285 ("It is well settled in this

circuit that literal privity is not a requirement for res judicata to apply."). Instead, "[t]he issue is one of substance rather than the names in the caption of the case," Alpert's Newspaper Delivery Inc., 876 F.2d at 270, and courts of this circuit have therefore recognized privity between parties to exist when the interests of one party were "adequately represented by another vested with the authority of representation," or "where a party to a previous suit was, at the time of the litigation, acting as either a fiduciary or organizational agent of the person against whom preclusion is asserted." Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kaptiaal Van Saybolt International B.V. v. Schrieber, 327 F.3d 173, 185 (2d Cir. 2003). Even when there is no formal agency relationship, courts have still found privity when the precluded party "nonetheless exercised some degree of actual control over the presentation of a party's case at the previous proceeding." Id. In such a case, if there was a sufficiently close relationship to the original litigant at the time of the first suit, "the principle of privity bars relitigation of the same cause of action." Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A., 56 F.3d 359, 367-368 (2d Cir. 1994). Privity has been found and res judicata will apply where the party served to formulate "an overarching strategy for the two actions" or the "litigation strategy [was] provided by the same 'mastermind' who controlled the previous litigation," Stichting, 327 F.3d at 186, n. 13 (citing Ruiz v. Comm'r of Dep't of Transp., 858 F.2d 898, 903 (2d Cir. 1988) and Alpert's Newspaper Delivery Inc., 876 F.2d at 270), or the party "controlled or substantially participated in the control of the presentation on behalf of a party to the prior action," Central Hudson Gas & Elec. Corp., 56 F.2d at 368 (internal quotations and punctuation omitted).

Finally, the doctrine of res judicata is "founded in part on the strong public interest in economizing the use of judicial resources by avoiding relitigation," Salahuddin v. Jones, 992

F.2d 447, 449 (2d Cir. 1993), and application of the doctrine serves several purposes: it "relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication," Faggiano v. Eastman Kodak Co., 378 F. Supp. 2d 292, 303 (W.D.N.Y. 2005) (quoting Allen v. McCurry, 449 U.S. 90, 94, (1980)). Therefore, a court may raise res judicata *sua sponte* even if it appears that the parties have waived it. See Scherer v. Equitable Life Assurance Soc'y., 347 F.3d 394, 398 (2d Cir. 2003); Salahuddin, 992 F.2d at 449 ("The failure of a defendant to raise res judicata in [a motion to dismiss] does not deprive the court of the power to dismiss a claim on that ground.").

The defendants have not raised res judicata. However, because "relitigation here would compel the use of...public funds to defend a claim that was adjudicated years ago," Salahuddin, 992 F.2d at 449, the Court raises res judicata *sua sponte*. As plaintiffs' instant action satisfies each of the requirements for application of res judicata, the case should be dismissed.

The first requirement is clearly met: Garland-Sash's complaint was dismissed with prejudice in its entirety and on the merits.[11] Certain defendants were found to be immune. See docket entry 2. The claims against the City and County defendants were dismissed under Fed. R. Civ. P. 12(b)(6). See docket entries 2, 36. The claim against defendant Rozzi was dismissed as time barred. See docket entry 52. As discussed *supra*, dismissal on these grounds has preclusive effect. It is similarly clear that the claims raised by the current plaintiffs arise from the same nucleus of fact as those raised by Garland-Sash. In fact, the claims in the two complaints are

---

[11] On October 1, 2007, the United States Supreme Court denied Garland-Sash's petition for a writ of certiorari, declining to review the Mandate of the Court of Appeals for the Second Circuit dismissing her appeal. See Garland-Sash v. City of New York, NY, 128 S.Ct. 193 (2007). As of the date of this Report, Garland-Sash has not yet paid the filing fee for the appeal of the September 6, 2007 judgment dismissing the claims against Police Officer Rozzi.

10

virtually indistinguishable. The only question remaining for application of res judicata is whether the parties in these two actions can be considered to be in privity with each other.

Neither Garland-Sash nor any of the present plaintiffs were – or could have been – vested with the authority of representation.[12] However, "[w]hether there is privity between a party against whom claim preclusion is asserted and a party to prior litigation is a functional inquiry in which the formalities of legal relationships provide clues but not solutions." Chase Manhattan Bank, N.A. v. Celotex Corp., 56 F.3d 343, 346 (2d Cir. 1996). Both Garland-Sash and the present plaintiffs submitted extremely long complaints that are almost identical, word for word.[13] This – coupled with the parties' familial relationship – strongly suggests that there was one "controlling person or entity...bringing multiple suits in the names of different plaintiffs, and controlling the litigation from the shadows." Ferris v. Cuevas, 118 F.3d 122, 127-128 (2d Cir. 1997). Moreover, since filing the instant action, the parties filed a related action together. See Garland-Sash, et al., v. Stutz, No. 05 CV 4207 (ENV)(LB) (filed August 25, 2005, alleging, *inter alia*, ineffective assistance of counsel in the action brought against plaintiff by ACS underlying the instant action). The inference that these actions were part of one overarching strategy supports the finding of privity between the parties. No other conclusion would be reasonable here – where spouses and their children filed nearly identical, successive complaints – but to find that the parties are in privity.

---

[12] 28 U.S.C. § 1654 provides that litigants who are not attorneys can represent themselves in civil actions in federal court, but cannot appear on behalf of another person. See, e.g., Iannaccone v. Law, 142 F.3d 553, 556 (2d Cir. 1998) ("because *pro se* means to appear for one's self, a person may not appear on another person's behalf in the other person's cause.").

[13] Garland-Sash's complaint was sixty-five pages long. The present plaintiffs submitted a complaint that was seventy-two pages long. The two complaints were formatted slightly differently, which resulted in a seven-page differential.

As all the requirements for the application of res judicata have been met, it is therefore respectfully recommended that plaintiffs' complaint should be dismissed against all defendants.

## C. Collateral Estoppel

In the alternative, for the same reasons, it is recommended that plaintiffs' complaint should be dismissed on the grounds of collateral estoppel. Collateral estoppel prevents parties or their privies from relitigating in a subsequent action issues of fact or law that were fully and fairly litigated in a prior action. See Marvel Characters, Inc. v. Simon, 310 F.3d 280, 288-289 (2d Cir. 2002); N.L.R.B. v. Thalbo Corp., 171 F.3d 102 109 (2d Cir. 1999); also Boguslavsky v. Kaplan, 159 F.3d 715, 719-720 (2d Cir. 1998). The requirements for collateral estoppel, or issue preclusion, differ slightly from those of claim preclusion. Collateral estoppel requires (1) the identical issue must have been raised in the previous proceeding; (2) the issue must have been actually litigated and decided in the previous proceeding; (3) the party must have had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue must have been necessary to support a valid and final judgment on the merits, see, e.g., Bear, Stearns & Co., Inc. v. 1109580 Ontario, 409 F.3d 87, 91 (2d Cir. 2005) (citing Interoceanica Corp. v. Sound Pilots, Inc., 107 F.3d 86, 91 (2d Cir. 1997). Because the identical factual and legal issues have already been raised in the Garland-Sash complaint and have been actually litigated and decided, collateral estoppel should bar plaintiffs from pursuing the instant action.

12

## CONCLUSION

Accordingly, it is respectfully recommended that the instant action should be dismissed against all defendants as it is barred by res judicata and collateral estoppel.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the ten-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED:

/S/
LOIS BLOOM
United States Magistrate Judge

Dated: January 18, 2008
Brooklyn, New York